Lawrence M. Farrell, McKenna, Conner & Cuneo, Washington, D.C., for plaintiff.

George P. Williams, Asst. U.S. Atty., Washington, D.C., for defendants.

---

**PACIFIC FABRICATION, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 87–288.

United States District Court, District of Columbia.

July 6, 1989.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff, a disappointed bidder, filed this action challenging the government's award of two contracts as arbitrary, capricious and an abuse of discretion, in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A), (D) (1982).

Presently before the Court are several motions, including plaintiff's Motion for Summary Judgment and the federal defendants'[1] Motion to Affirm Contract Awards. For the reasons that follow, we deny plaintiff's motion and affirm the contract awards.

---

[1] The federal defendants are: the United States of America, the Department of Defense, and the Defense Logistics Agency.

## I. *Background*

Plaintiff, Pacific Fabrication, Inc., is a mobilization base contractor for the supply of canteen cups to the United States Government. The Defense Logistics Agency (DLA), an arm of the Department of Defense (DOD), is responsible for acquiring, storing and distributing supplies for the military services. DLA is assisted by the Defense Personnel Support Center (DPSC), which procures and manages military supplies, including canteen cups.

In April 1985 DPSC issued a solicitation for the purchase of 596,700 canteen cups. This solicitation was divided equally into an unrestricted portion (bids for 298,350 cups open to both large and small businesses) and a restricted portion (bids for remaining 298,350 cups set aside for small businesses only). In May 1985, bids were opened on the unrestricted portion of the solicitation.[2] On October 8, 1985, a DPSC Contracting Officer awarded contract number DLA 100–86–C–4018 (First Contract) for the production of 298,350 canteen cups at a total price of $787,644 to S. Hanany Metal Craft (Hanany). The Contracting Officer found Hanany to be the lowest responsive and responsible bidder on the basis of Hanany's bid and amendment and a favorable pre-award survey.[3]

Bids were opened under a second solicitation for 298,350 canteen cups in February 1986.[4] On July 10, 1986, another DPSC Contracting Officer awarded contract number DLA 100–86–C–4365 (Second Contract) for an additional 298,350 canteen cups to Hanany, finding it to be the lowest responsive and responsible bidder. The Contracting Officer's award was based upon Hanany's bid and amendment, letters and telegrams extending and clarifying its offer,

and another favorable pre-award survey. Again, Pacific Fabrication was the next lowest responsive and responsible bidder.

On March 10, 1986, this court granted a preliminary injunction with regard to the Second Contract, pending an investigation of the allegations made by plaintiff by the United States General Accounting Office (GAO). The GAO has now completed its investigation and issued its report. *See* Plaintiff's Exhibit A, "Army Procurement—Defense Logistics Agency's Administration of Contract for Canteen Cups" (GAO Report).

Plaintiff has moved for summary judgment contending that there was no rational basis supporting the award of the Second Contract to Hanany.[5] Plaintiff points to several problems involving the government's administration of the First Contract and argues that the failure of the government to properly administer the First Contract precluded it from having any rational basis for awarding the Second Contract to Hanany. Plaintiff argues that Hanany was not a responsible offerer on the Second Contract solicitation because Hanany did not comply with all material requirements of the second solicitation.

The federal defendants oppose plaintiff's motion and move this court to affirm the contract awards.

## II. *Discussion*

The sole issue before this court is whether the award of the Second Contract to Hanany was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Plaintiff bears the "heavy burden of showing either that (1) the pro-

---

2. Eleven offers were received. Hanany, with a unit price offer of $2.64, made the lowest bid. Pacific Fabrication was the next lowest bidder, with a unit price offer of $3.27.

3. During the pre-award process, officials at a Defense Contract Administration Service Region (DCASR) performed or monitored pre-award surveys of the firms' production and technical capabilities.

4. These 298,350 cups were originally targeted as the restricted portion of the first solicitation and

were offered to eligible bidders at the same price awarded to Hanany. Because the other bidders declined to meet the price, the restricted portion of the solicitation was cancelled, and a second solicitation for the cups was issued—this time as an unrestricted procurement.

5. Plaintiff appears to have dropped any challenge it had to the government's award of the First Contract to Hanany. Plaintiff's motion for summary judgment is directed solely to the Second Contract award.

curement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Limited v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir. 1973).

Pacific Fabrication contends that the government should have known that Hanany was not a responsible offeror on the Second Contract because the government knew that the place of performance cited on Hanany's bids inaccurately described the place where the work was actually to be performed. Although Hanany never sought or obtained formal approval of a change in the place of performance, it appears that the government was aware of the actual place of performance prior to awarding either of the contracts and that the pre-award survey findings were based upon knowledge of the actual place of performance.[6] Plaintiff relies heavily on the GAO Report, which plaintiff claims "substantially" supports its allegations.[7] We find the contrary to be true. Regarding place of performance, the GAO Report concludes:

> We have concluded in previous cases that failure to disclose the place of performance is usually a matter of bidder responsibility and *not* a matter that automatically disqualifies a bid from award. (See Comptroller General's procurement decisions B–221878, March 21, 1986; B–219116, August 26, 1985; and B–199934, September 22, 1980.) Even though Hanany made no request of the contracting officer, the government, through the pre-

award survey's findings, was aware of the place of performance.

GAO Report at 10 (emphasis supplied).

■ We are unable to conclude that Hanany's failure to formally obtain approval for a change in the place of performance robbed the government of any rational basis for its award of the Second Contract to Hanany, particularly in light of the fact that the government was aware of the change before the contract was awarded.

■ Plaintiff also contends that, at the time the Second Contract was awarded, Hanany was late in making its first delivery on the First Contract. Plaintiff argues Hanany's delinquency on the First Contract demonstrated a lack of responsibility on Hanany's part that should have precluded Hanany from being awarded the Second Contract. The first delivery was due on the First Contract on May 26, 1986. However, due to government delays, DPSC gave Hanany a two-month delivery extension to July 20, 1986. The Second Contract was awarded on July 10, 1986—10 days *before* Hanany was to make the first delivery on the First Contract. Although Hanany *subsequently* failed to meet the extended delivery schedule,[8] Hanany cannot be said to have been delinquent at the time the Second Contract was awarded. We do not view Hanany's subsequent delinquency as a basis for regarding the Second Contract award as arbitrary and capricious.

Finally, plaintiff argues that Hanany was not a responsible bidder on the Second Contract because it did not have adequate facilities to perform the contract. Plaintiff contends that if the government had properly administered the First Contract by ini-

---

6. Although Hanany's bid on the First Contract stated that the cups would be produced at Hanany's plant at Haifa Bay, Israel, the government conducted pre-award surveys of Hanany's plant at Haifa Bay as well as a plant in Kibuz Lehavot Habashan. *See* Admin. Rec. Tab 3, Pre-award Survey of Hanany on DLA100–85–B–0778 (First Pre-award Survey) at 19. Although Hanany did not seek formal approval for the use of a subcontractor, the government was nevertheless aware, before any award was made, of Hanany's intention to use two presses at the plant in Lehavot. *Id.* at 13.

7. Although the GAO's conclusions are not binding upon this court, they are nevertheless entitled to considerable deference in view of the GAO's expertise. *See Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1316 (D.C.Cir.1971).

8. Hanany did not make its first shipment, which was only a partial shipment, until December 22, 1986. On April 8, 1987, DPSC issued a modification on the First Contract that further extended the first delivery from July 20, 1986 to April 30, 1987 and required Hanany to pay $1,969 in consideration for the extension of delivery time due to Hanany's failure to deliver.

tiating on-site production surveillance, it would have known of Hanany's inability to meet production and delivery requirements of the Second Contract.

We recognize that the government most likely would have discovered Hanany's production problems prior to the award of the Second Contract had the government initiated production surveillance on the First Contract in a more timely manner.[9] This issue, however, which goes directly to problems of contract administration, is generally not a matter of which disappointed bidders may complain. *See Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 841–43 (D.C.Cir.1982) (regulations concerning administration of government contracts intended to protect the government from injury, not to protect the economic interest of prospective bidders). Although more diligent surveillance of the First Contract would have provided additional, and certainly relevant, information upon which the Contracting Officer could have made a *more* reasoned and rational decision, for our purposes of review, we are concerned with the question of whether the information before the Contracting Officer provided any rational basis for the decision to award the Second Contract to Hanany. The record reflects that at the time the Second Contract was awarded, there was a favorable pre-award survey indicating that Hanany was acquiring additional manufacturing equipment to increase its capacity and that Hanany was capable of performing. *See* Admin.Rec. Tab 7. After investigating the matter, the GAO found: "Our examination showed that the government's pre-award surveys had obtained sufficient information to support an award recommendation. We found no basis to question the scope or performance of these surveys." GAO Report at 2 (referring to both the First and Second Contract pre-award surveys).

We believe that the pre-award survey provided the Contracting Officer with sufficient information to preclude our finding that the decision to award the Second Con-

tract to Hanany was without any rational basis. We furthermore note that contracting officers are generally granted wide discretion in making responsibility determinations. *See Trilon Education Corp. v. United States*, 217 Ct.Cl. 266, 578 F.2d 1356, 1358 (Ct.Cl.1978). We conclude that plaintiff has failed to meet its burden of demonstrating that the award of the Second Contract to Hanany lacked any rational basis or involved a clear and prejudicial violation of applicable statutes or regulations. Accordingly, plaintiff's motion for summary judgment must be denied and the federal defendants' motion granted.

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of the various motions filed by the parties in the above-captioned action and the entire record herein, and for the reasons set forth in the accompanying memorandum opinion, it is by the Court this 5th day of July, 1989

ORDERED that the federal defendants' Motion to Affirm Contract Awards be and hereby is granted; and it is

ORDERED that plaintiff's Motion for Summary Judgment is denied; and it is

ORDERED that plaintiff's Motion for Renewal and Extension of Preliminary Injunction is denied as moot; and it is

ORDERED that the Motion to Dismiss filed by defendant S. Hanany Metal Craft, Ltd. is denied as moot; and it is

FURTHER ORDERED that judgment is entered in favor of the defendants and this case is dismissed with prejudice.

---

**9.** DCASR ordinarily begins on-site production surveillance 30 days after a contract is awarded. However, in this case, production surveillance did not begin until November 1986—13 months after the award of the First Contract.